**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **LITL LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HP INC.,**<br><br>**Defendant.** | **Court No. 1:23-cv-00120-JCG** |
| **LITL LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DELL TECHNOLOGIES INC. AND DELL INC.,**<br><br>**Defendants.** | **Court No. 1:23-cv-00121-JCG** |
| **LITL LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ASUSTEK COMPUTER INC. AND ASUS GLOBAL PTE. LTD.,**<br><br>**Defendants.** | **Court No. 1:23-cv-00122-JCG** |

**OPINION & ORDER**

[Providing clarification of the Court's June 30, 2026 Opinion and Order.]

Dated: November 9, 2026

Adam W. Poff, Robert M. Vrana, and Jennifer P. Siew, Young Conaway Stargatt & Taylor, LLP, of Wilmington, DE; Michael A. Albert, Eric J. Rutt, Gerald B. Hrycyszyn, Hunter D. Keeton, and Jason W. Balich, Wolf, Greenfield & Sacks, P.C., of Boston, MA. Attorneys for Plaintiff LiTL LLC.

Angela C. Whitesell, DLA Piper LLP (US), of Wilmington, DE; Sean Cunningham and Erin Gibson, DLA Piper LLP (US), of Washington, D.C.; James M. Heintz, DLA Piper LLP (US), of Reston, VA; Jackob Ben-Ezra, DLA Piper LLP (US), of Houston, TX; Claire Schuster, DLA Piper LLP (US), of Boston, MA. Attorneys for Defendant HP Inc.

Jeremy A. Tigan, Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, DE; Eugene Y. Mar, Erik C. Olson, Victoria C. Huang, and Raven Quesenberry, Farella Braun + Martel LLP, of San Francisco, CA. Attorneys for Defendants Dell Technologies Inc. and Dell Inc.

Stephen J. Kraftschik, Polsinelli PC, of Wilmington, DE; Michael J. Newton and Brady Cox, Alston & Bird LLP, of Dallas, TX; Yuri Mikulka, Alston & Bird LLP, of Los Angeles, CA. Attorneys for Defendants ASUSTeK Computer Inc. and Asus Global Pte. Ltd.

Choe-Groves, Judge: The Court issues this Opinion and Order to clarify the scope of this Court's prior Opinion and Order (June 30, 2026), granting in part and denying in part as moot Defs.' Mot. Summ. J. on Common Issues and Def. HP Inc.'s Mot. Summ. J. and Mot. Exclude Expert Testimony ("Opinion and Order") (D.I. 356).[1] The Parties have filed letters indicating that there remains an ongoing

---

[1] Citations to the docket primarily refer to the first-filed action, LiTL LLC v. HP Inc., Case No. 1:23-cv-00120-JCG, unless otherwise indicated.

dispute regarding the scope of the implied license following the Opinion and Order. See Joint Ltr. to the Honorable Jennifer Choe-Groves (July 7, 2026) (D.I. 359). Upon consideration of the papers and proceedings in this action, the Court issues this Opinion and Order maintaining the conclusion of the prior Opinion and Order and providing clarification that this Court's conclusion disposes of Plaintiff's claim of pre-agreement infringement.

## BACKGROUND

On February 1, 2023, LiTL filed Complaints against Defendants alleging infringement of eight patents. Joint Statement Undisputed Facts Defs.' Mot. Summary J. Common Issues and Def. HP Inc.'s Mot. Summ. J. ("Joint Statement") ¶ 1 (D.I. 347). On September 19, 2024, LiTL dismissed with prejudice two of the originally asserted patents, U.S. Patent Nos. 8,624,844 and 8,612,888. Id. at ¶ 2. LiTL's six remaining asserted patents are U.S. Patent Nos. 8,289,688 ("the '688 Patent"), 9,563,229 ("the '229 Patent"), 10,289,154 ("the '154 Patent"), 9,003,315 ("the '315 Patent"), 9,880,715 ("the '715 Patent"), and 10,564,818 ("the '818 Patent") (collectively, "the Asserted Patents"). Id. ¶ 3.

## LEGAL STANDARD

The Court has jurisdiction over the underlying actions pursuant to 28 U.S.C. §§ 1331 and 1338.

Summary judgment is appropriate when a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a fact that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Material facts are those "that could affect the outcome" of the proceeding. Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011). The evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The "moving party bears the burden of proving that no genuine issue of material fact is in dispute." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996). In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the nonmoving party and the Court must not make credibility findings. Anderson, 477 U.S. at 255. If the moving party satisfies this initial burden, the nonmoving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The nonmoving party must go beyond the assertions and allegations of the

pleadings and show through affidavits, depositions, answers to interrogatories, or admissions on file that a genuine dispute of material fact exists. Id. at 324.

The Court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## DISCUSSION

### I. Defendants' Motion for Summary Judgment: License and Exhaustion

The Court finds that the following facts are undisputed:

On August 13, 2025, Plaintiff and an entity ("Licensee")[2] entered into a License Agreement ("the Agreement") to resolve differences concerning Licensee's accused devices and software as related to the actions and Asserted Patents. Joint Statement ¶ 5. The Agreement recites that "[Licensee] denies infringement and any liability as to the Asserted Patents[.]" Id. ¶ 7. Nothing in the Agreement "shall extinguish, impair or otherwise affect any defenses of the [Licensee] Entities or [Licensee] Customers against the Licensed Patents,

[2] The Court refers to this entity as "Licensee" to reflect redactions made in public versions of the filed documents.

including that the Licensed Patents are not infringed, are invalid[,] or are not enforceable."[3] Id. ¶ 9. Subsections (a) and (b) of Section 3.1 state:

> (a) For activity occurring before the Effective Date, PLAINTIFF Releasing Entities each hereby voluntarily and irrevocably releases each of [Licensee] Entities and, in their capacity as such, each of their officers, directors, employees, agents, attorneys, vendors, suppliers, service providers, subcontractors and insurers (together with [Licensee] Entities, "[Licensee] Released Entities") of and from any and all rights, claims, debts, liabilities, demands, obligations, promises, damages, sanctions, attorney's fees, court costs, causes of action and claims for relief of any kind, manner, nature and description, whether known, unknown, suspected, or unsuspected ("Claims"), which any of the PLAINTIFF Releasing Entities have, may have had, might have asserted, may now have or assert, or may hereafter have or assert against the [Licensee] Released Entities, or any of them, in connection with the Licensed Patents, the Action, the conduct of the Actions and the settlement negotiations relating thereto, or any act, event or thing occurring before the Effective Date which, had it occurred on or after the Effective Date, would be licensed or subject to a covenant under Section 4 below.
>
> (b) For activity occurring before the Effective Date, PLAINTIFF Releasing Entities each hereby voluntarily and irrevocably releases any and all third parties (including any and all of the [Licensee] Released Entities' previous, current and future customers, suppliers, contract manufacturers, original equipment manufacturers, service providers, licensees, distributors, resellers, independent software vendors, subscribers, users and end users, whether direct or indirect) ("[Licensee] Customers") of and from any and all Claims which any of

---

[3] The Agreement defines "Licensed Patents" to include "(a) the Asserted Patents (b) any and all other patents, patent applications, registrations and/or other intellectual property owned or controlled by PLAINTIFF Entities as of the Effective Date or anytime thereafter . . . ." Dec. Angela C. Whitesell Supp. Defs.' Mot. Summ. J. Def. HP Mot. Summ. J. Mot. Exclude Expert Testimony, Ex. 1 ("The Agreement") at 3 (D.I. 309-1). The Agreement also lists Plaintiff as the owner of all right, title, and interest in the '688, '229, '154, '315, '715, and '818 Patents. Id. at 1.

> the PLAINTIFF Releasing Entities have, may have had, might have asserted, may now have or assert, or may hereafter have or assert against [Licensee] Customers, or any of them, in connection with the Licensed Patents (but only as to [Licensee] Products and the use thereof) or in connection with any act, event or thing occurring before the Effective Date which, had it occurred on or after the Effective Date, would be licensed or subject to a covenant under Section 4 below (but only as to [Licensee] Products and the use thereof). For purposes of clarity, anything in this clause to the contrary notwithstanding, PLAINTIFF Releasing Entities do not release any Claims that PLAINTIFF has asserted against Defendant OEMs in the Actions for the sale of products made or sold by or on behalf of Defendant OEMs except claims for which all essential inventive elements are embodied in a [Licensee] Product.

Id. ¶¶ 11–12. Subsections (a) and (b) of Section 4.1 recite:

> (a) PLAINTIFF Releasing Entities hereby grant to [Licensee] Released Entities a worldwide, irrevocable, nonexclusive, non-sublicensable, non-transferable, perpetual, fully paid up, royalty-free, license ("License") under the Licensed Patents, commencing on the Effective Date: (a) to design, make, have made (including software replication under license), use, follow and provide instruction on the use of, purchase, license, distribute, have distributed, sell, offer for sale, lease, host, stream, brand, import, export, provide, distribute, supply, promote, market, commercialize, exploit or otherwise provide, ("Sell") any [Licensee] Products, (b) to use or practice (and follow and provide instruction on the use or practice of) any method or steps ("Use"), provide a means to use or practice (and follow and provide instruction on the use of any means for using or practicing) any method or steps ("Practice") and otherwise commercialize or exploit ("Exploit") the Licensed Patents in any [Licensee] Products and (c) engage in any act relating to any [Licensee] Products that otherwise would be prohibited but for having a license under the Licensed Patents.
>
> (b) Cumulative with the rights conferred by Section 4.1(a), PLAINTIFF Releasing Entities hereby grant to [Licensee] Customers commencing on the Effective Date, a License under the Licensed Patents to Sell, Use, Practice and Exploit [Licensee] Products, alone or in combination with other hardware or software; provided, however,

> that for each such [Licensee] Product, the License is only to any claim of the Licensed Patents all of whose essential inventive elements are embodied in said [Licensee] Product. No other rights are granted hereunder by implication, estoppel, statute, operation of law or otherwise.

Id. ¶¶ 13–14. The Agreement "shall be construed and controlled by the internal laws of the State of Washington (excluding conflict of laws principles)." Id. ¶ 17.

The Licensee sells certain products, the "Licensee Products." The Licensee Products include:

> [A]ny past, present or future machine, apparatus, tool, kit, including porting or development kits, component, technology, protocols, hardware, software, product, system, equipment, offering or service, including instructions on use, marketing materials, specifications and other documentation and information, ("Product") that is directly or indirectly made, designed, used, sold, offered for sale, purchased, branded, imported, exported, developed, written, composed, distributed, offered or marketed by or for, bought, leased, hosted, licensed or otherwise obtained from or made available, supplied, streamed, distributed or otherwise provided by or for [Licensee] Entities. For purposes of clarity, [Licensee] Products do not include any of Defendant OEMs products that PLAINTIFF has accused of infringing the Asserted Patents in the Actions or any subsequent versions thereof that are not colorably different.

Id. ¶ 8. Defendants' accused products all use Licensee Products. Id. ¶ 18.

### A. Implied License

An implied license is a defense to patent infringement because infringement requires an unauthorized use of a patented invention. Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1350 (Fed. Cir. 2003); see 35 U.S.C. § 271(a). Implied licenses between a patentee and a purchaser, or a licensee and a purchaser, require

that the licensee: (1) sell an article with no non-infringing uses; and (2) the circumstances of the sale plainly indicate that the grant of a license should be inferred. Anton/Bauer, Inc., 329 F.3d at 1350 (citing Met-Coil Sys. Corp. v. Korners Unlimited, Inc. ("Met-Coil"), 803 F.2d 684, 686 (Fed. Cir. 1986)); see Jacobs v. Nintendo of Am., Inc., 370 F.3d 1097, 1100 (Fed. Cir. 2004). If an implied license is derived from an express license, then the question of non-infringing use is irrelevant. Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc. ("Zenith"), 522 F.3d 1348, 1360–61 (Fed. Cir. 2008). Whether an implied license exists is a question of law. See Anton/Bauer, Inc., 329 F.3d at 1348.

Implied licenses may arise by acquiescence, conduct, equitable estoppel, or legal estoppel. Wang Lab'ys, Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571, 1580 (Fed. Cir. 1997). The U.S. Court of Appeals for the Federal Circuit ("CAFC") has recognized that a patent license does not convey to the licensee an absolute right to make, use, or sell a product, because not even the patentee is given that right. Endo Pharms. Inc. v. Actavis, Inc., 746 F.3d 1371, 1377 (Fed. Cir. 2014); see 35 U.S.C. § 154(a)(1). The doctrine of legal estoppel does not negate this principle; "[i]nstead, it 'refers to a narrow category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted.'" Id. (quoting TransCore, LP v. Elec. Transaction Consultants Corp., 563 F.3d 1271, 1279 (Fed.

Cir. 2009)); see Winbond Elecs. Corp. v. Int'l Trade Comm'n, 262 F.3d 1363, 1375 (Fed. Cir. 2001), opinion corrected, 275 F.3d 1344 (Fed. Cir. 2001). The patentee is estopped from taking back in any extent that for which the patentee has already received consideration. Jacobs, 370 F.3d at 1101 (citing AMP Inc. v. United States, 389 F.2d 448, 453 (Ct. Cl. 1968)).

Defendants argue that the Agreement between LiTL and Licensee granted a broad release of Licensee from any claims under the Asserted Patents for actions by Licensee before the effective date of the Agreement that would be subject to Licensee's express license, and thus Defendants derived an unrestricted implied release from Licensee's express release. Defs.' Opening Br. Resp. Court's July 14, 2026 Order ("Defs.' Br.") at 3–6 (D.I. 362); Defs.' Reply Br. Resp. Court's July 14, 2026 Order ("Defs.' Reply Br.") at 2–3 (D.I. 366). Plaintiff argues that the Agreement includes three restrictions: (1) an express release limited to Licensee; (2) a narrow release offered to Licensee's customers; and (3) an express carve out of Defendants from the narrow release offered to Licensee's customers. Pl. LiTL LLC's Answering Br. Court's Four Questions (D.I. 360) ("Pl.'s Br.") at 3–4 (D.I. 364).

It is an undisputed fact that the Agreement grants Licensee a license to sell, use, practice, or exploit the Asserted Patents in any Licensee Products in Section 4.1(a), followed by a provision granting Licensee's customers a license under

certain conditions in Section 4.1(b). Joint Statement ¶¶ 13–14. Section 4.1(b) is "[c]umulative with the rights conferred by Section 4.1(a)." Id. ¶ 14. It is also an undisputed fact that Section 3.1(a) of the Agreement grants Licensee a release from any claims by Plaintiff for acts occurring before the Effective Date of the Agreement that, had the acts occurred on or after the Effective Date, would be licensed under Section 4. It is also an undisputed fact that Section 3.1(b) grants to Licensee's customers a release under certain conditions. Id. ¶¶ 11–12. Section 3.1(b) conditions that "anything in this clause to the contrary notwithstanding" Plaintiff does not release its claims against Defendants "except claims for which all essential inventive elements are embodied in a [Licensee] Product." Id. ¶ 12.

Plaintiff argues that Defendants cannot prevail on an implied license or implied release defense because Section 3.1(a) expressly excludes Defendants. Pl.'s Br. at 3. In the Opinion and Order, this Court held that the language of Section 4.1(a) granted Licensee "an affirmative right to engage in any act relating to any Licensee products, such as the sale of Licensee products . . . without restriction." Opinion and Order at 12. This Court further held that because "Section 4.1(b) imposes no restrictions on Licensee's ability to sell," interfering with Licensee's right to sell "that Plaintiff received consideration for would violate contract principles." Id. at 13. This Court concluded that the broad right to sell "bars Plaintiff from interfering with that right by prohibiting Licensee's customers

from using Licensee's products." Id. at 14. Therefore, this Court held that the Agreement granted Licensee's customers, including Defendants, an implied license derived from the express license between LiTL and Licensee. Id.

The Court concludes that the undisputed facts support a conclusion that the Agreement grants Licensee a broad express release under Section 3.1(a). See Joint Statement ¶ 11. Licensee is released from the following:

> any claims that Plaintiff Releasing Entities have, may have had, might have asserted, may now have or assert, or may hereafter have or assert against the [Licensee], in connection with the Licensed Patents . . . or any act, event, or thing occurring before the Effective Date which, had it occurred on or after the Effective Date, would be licensed or subject to a covenant under Section 4 below.

Id. The restrictions in Section 3.1(b) are aimed at conditioning the express release of Licensee's customers. See id. ¶ 12. Section 3.1(b) does not place any conditions on Licensee's express release. See id.

The language of Section 3.1(a) indicates that Section 3.1(a) is to be read in conjunction with the rights conferred under Section 4. See id. ¶ 11. Section 4.1(a) grants Licensee an affirmative right to engage in any act relating to any Licensee products, such as the sale of Licensee products, that would otherwise infringe the Asserted Patents notwithstanding the Agreement. See id. ¶ 13. The grant to Licensee of Sections 3.1(a) and 4.1(a) is large in the scope of activity that Licensee can engage in regarding the Asserted Patents, and the grant would be diminished if Plaintiff could interfere with Licensee's contractual right to past, present, and

future sales of Licensee Products to customers such as Defendants. See id. ¶¶ 11, 13; Jacobs, 370 F.3d at 1101 ("We agree with the district court that the clause granting Analog the right to sell its accelerometers for use in tilt-sensitive control boxes barred Jacobs from interfering with that right by prohibiting Analog's customers from using the accelerometers for that authorized purpose by making, using, and selling control boxes incorporating Analog's devices."). Licensee was authorized to make past, present, and future sales of Licensee Products to Defendants because the Agreement granted a broad express license to sell Licensee Products that would otherwise be prohibited but for the Agreement. See Jacobs, 370 F.3d at 1100. Similar to the licensing agreement in Jacobs, Sections 3.1(a) and 4.1(a) granted Licensee an affirmative right to engage in any act relating to any licensee products, such as the sale of Licensee products, that would otherwise infringe the Asserted Patents notwithstanding the Agreement in the past, present, or future, and the Court holds that Sections 3.1(a) and 4.1(a) grant these rights without restriction. See id. at 1101; see also id. at 1098–99 (the settlement agreement included a "license to take any actions set forth in 35 U.S.C. § 271 which would, but for this license, constitute an infringement or violation of Jacobs' patent rights under the '958 patent[,]" "the right to make, use, sell, import, and export components[,]" and "[a] covenant-not-to-sue [that] extends to any cause of action having as an element the infringement of the '958 patent by Analog or any

other party, whether occurring in the past, present, or in the future.”).

Plaintiff argues that the language “any act, event, or thing occurring before the Effective Date which, had it occurred on or after the Effective Date, would be licensed or subject to a covenant under Section 4 below” only expands the class of claims and not the class of released parties in Section 3.1(a). Pl.’s Br. at 3–4. “Contract interpretation is a question of law.” Lionra Techs. Ltd. v. Cisco Sys., Inc., No. 2024-2153, 2026 WL 160572, at *2 (Fed. Cir. Jan. 21, 2026) (citation omitted). Washington law, which governs the interpretation of contract terms within the Agreement, generally gives words in a contract their ordinary, usual, and popular meaning. See Joint Statement at ¶ 17; Hearst Commc’ns, Inc. v. Seattle Times Co., 115 P.3d 262, 267 (Wash. 2005). The class of claims under Section 4.1(a) encompasses Licensee’s affirmative right to engage in any act relating to any Licensee products, such as the sale of Licensee products without restriction. See Joint Statement ¶ 13. Section 4.1(a) “commenc[es] on the Effective Date,” indicating that the rights given in Section 4.1(a) cover the present and future. See id. Section 3.1(a) covers “any act, event, or thing occurring before the Effective Date” indicating that the rights given in Section 3.1(a) cover the past. Id. ¶ 11. Section 3.1(a) further covers “any act, event, or thing” that “would be licensed or subject to a covenant under Section 4,” indicating that the rights given in Section 3.1(a) encompass those given in Section 4, including those given in

Section 4.1(a). See id. The Court concludes that Sections 3.1(a) and 4.1(a) granted Licensee the broad right to sell its products in the past, present, and future. It is a basic contract law principle that a party may not assign a right, receive consideration for it, then proceed to take steps to rid the right of its commercial worth. See Jacobs, 370 F.3d at 1101. The Court concludes that, together, Section 3.1(a) and Section 4.1(a) bar Plaintiff from interfering with Licensee's bargained for right by prohibiting Licensee's past, present, or future customers from using Licensee's products. See id. An expansion of the class of released parties is irrelevant here because Defendants derived an implied license from Licensee's express license. The Court concludes that the Agreement granted Licensee's past, present, and future customers an implied license to sell, use, practice, or exploit the Licensed Patents through any Licensee products and engage in any act relating to any Licensee Products that otherwise would be prohibited but for the Agreement.

The provision in Section 3.1(b) does not limit the express license of Sections 3.1(a) and 4.1(a). Plaintiff contends that Section 3.1(b) contains a provision that preserves LiTL's claims against Defendants. Pl.'s Br. at 4. Section 3.1(b) states:

> For purposes of clarity, anything in this clause to the contrary notwithstanding, PLAINTIFF Releasing Entities do not release any Claims that PLAINTIFF has asserted against Defendant OEMs in the Actions for the sale of products made or sold by or on behalf of Defendant OEMs except claims for which all essential inventive elements are embodied in a [Licensee] Product.

Joint Statement ¶ 12. The language "anything in this clause to the contrary

notwithstanding" indicates that the provision modifies the scope of the release in Section 3.1(b). See id. Neither Section 3.1(a) nor Section 3.1(b) contain language that imposes limitations from Section 3.1(b) upon Section 3.1(a). See id. ¶¶ 11–12; see Hearst Commc'ns, Inc., 115 P.3d at 269 (declining to impose a provision from a first clause to modify a second clause when the first clause does not reference the second clause or explain if or how the clauses affect one another). Because Defendants' implied license is derived from Licensee's express license in Section 3.1(a) and Section 4.1(a), the Court concludes that the language of Section 3.1(b) does not exclude Defendants from the implied license.

**B. Circumstances of the Sale**

To conclude that an implied license existed, the circumstances of the sale must plainly indicate that the grant of a license should be inferred. Anton/Bauer, Inc., 329 F.3d at 1350. The Agreement places no restrictions on Licensee's ability to sell its products, and it is undisputed that Defendants' accused products use Licensee products. Joint Statement ¶¶ 11, 13, 18. The Court concludes that the circumstances of the sale plainly indicate that the grant of a license should be inferred for past, present, and future sales. See Zenith, 522 F.3d at 1362 (holding that no restrictions were placed on license agreements that offered broad grants of patent rights and affirming the district court's grant of summary judgment of non-infringement due to the existence of an implied license). Because the Court has

concluded that Defendants have an implied license to sell, use, practice, or exploit the Licensed Patents through any of Licensee Products and engage in any act relating to any of Licensee Products that otherwise would be prohibited but for the Agreement in the past, present, and future, there can be no direct infringement of the Asserted Patents based on the accused products' use of Licensee Products. See Met-Coil, 803 F.2d at 687 (affirming the district court's holding that neither direct nor induced infringement could be established when customers enjoyed an implied license to practice the claimed inventions in a patent). The Court concludes that Defendants similarly enjoyed an implied license to practice the claimed inventions through Licensee's products in the past, present, and future, and Defendants are entitled to summary judgment of noninfringement of the Asserted Patents as a matter of law.

This Court's Opinion and Order is maintained with clarification that Defendants' implied license extends to actions taken before the effective date of the Agreement.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that this Court's Opinion and Order, granting in part and denying in part as moot Defs.' Mot. Summ. J. on Common Issues and Def. HP Inc.'s Mot. Summ. J. and Mot. Exclude Expert Testimony (D.I. 356) is maintained

with the clarification that Defendants' implied license extends to actions taken before the effective date of the Agreement.

Judgment will be entered accordingly.

IT IS SO ORDERED this 9th day of November, 2026.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.